# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Coast to Coast Produce, LLC,

                          Plaintiff,          Case No. 24-11325

v.                                            Judith E. Levy
                                              United States District Judge
AMCO Produce Corp., *et al.*,
                                              Mag. Judge Kimberly G. Altman
                          Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT [14]

Before the Court is Plaintiff's Motion for Leave to File Amended Complaint ("the Motion"). (ECF No. 14; *see also* ECF No. 15 (Memorandum of Law in Support of Plaintiff's Motion for Leave to File Amended Complaint).) For the reasons set forth below, the Motion is DENIED.

## I.   Background

Plaintiff filed its complaint against Defendants on May 21, 2024, raising claims under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*, for failure to pay trust funds, failure to

make prompt payment of trust funds, breach of fiduciary duty, and breach of contract. (ECF No. 1.) The complaint named AMCO Produce Corporation, "a Michigan corporation with its principal place of business in Detroit, Michigan," and Fausto Amicone, "an officer, director, and/or shareholder" of AMCO Produce Corporation, as Defendants. (*Id.* at PageID.2.) Plaintiff alleges that "[b]etween December 24, 2022 and April 22, 2023" it sold and delivered produce to Defendants, which Defendants "failed and refused" to pay for "despite repeated demands." (*Id.* at PageID.3–4.) It states that AMCO Produce Corporation is "subject to and licensed under the provisions of PACA as a dealer under PACA license number 20220864."[1] (*Id.* at PageID.2.)

The Sixth Circuit has explained that PACA establishes "a comprehensive regulatory scheme for the sale of produce in interstate commerce," including creating a "statutory trust" when a buyer accepts the commodities covered by PACA. *Six L's Packing Co. v. Beale*, 524 F.

---

[1] A PACA license is a mechanism through which the federal government exerts control over dealers in perishable agricultural commodities. *H.C. MacClaren, Inc. v. U.S. Dep't of Agric.*, 342 F.3d 584, 588–89 (6th Cir. 2003). Those who operate as "a commission merchant, dealer, or broker" as defined by PACA must have a license. 7 U.S.C. § 499c(a).

App'x 148, 152 (6th Cir. 2013) (internal quotations omitted). PACA provides, in relevant part, that

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2). Plaintiff alleges in the complaint that it preserved its rights in the statutory trust established under PACA through language in its invoices. (ECF No. 1, PageID.3–4); *see also* 7 U.S.C. § 499e(c)(4).

On October 31, 2024, Plaintiff filed this Motion. (ECF No. 14; *see also* ECF No. 15 (Memorandum of Law in Support of Plaintiff's Motion for Leave to File Amended Complaint).) Plaintiff seeks to amend the complaint to add five additional Defendants: AMCO Produce, Inc., AMCO Farms, Inc., AMCO Storage, Inc., AMCO Express, Inc., and Gina Amicone (the "Proposed Defendants"). (ECF No. 15, PageID.169–170.) It argues that AMCO Produce Corporation and AMCO Produce Inc. are

3

alter egos. (ECF No. 15, PageID.166.) Further, Plaintiff contends that AMCO Produce Inc., AMCO Farms, Inc., AMCO Storage, Inc., and AMCO Express, Inc. (the "Proposed Corporate Defendants") are "allied companies" constituting the AMCO Group, which "commingled proceeds from the sale of produce and regularly transferred funds . . . to fund their operations." (*Id.* at PageID.169–170.) The Proposed Corporate Defendants are Canadian companies. (ECF No. 15-4, PageID.235–236.) According to Plaintiff, Defendant Fausto Amicone leads the AMCO Group, and Proposed Defendant Gina Amicone also has leadership roles in AMCO Produce, Inc. and AMCO Express, Inc. (ECF No. 15, PageID.169–170.) Plaintiff contends that the Proposed Defendants are liable to it for failure to pay for produce it delivered, as well as for violations of PACA. (*Id.* at PageID.176.)

Defendants responded in opposition to the Motion, (ECF No. 24,) and Plaintiff replied. (ECF No. 25.)

## II. Legal Standard

A party seeking to amend its complaint, when such an amendment would not be permitted as a matter of course, "may amend its pleading only with the opposing party's written consent or the court's leave. The

4

court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave should be denied where the amendment demonstrates defects such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018) (quoting *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017)). "To deny a motion to amend, a court must find 'at least some significant showing of prejudice to the opponent.'" *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008) (quoting *Moore v. City of Paducah,* 790 F.2d 557, 562 (6th Cir. 1986)).

## III.   Analysis

Plaintiff seeks to add five Proposed Defendants, including four corporate entities, AMCO Produce, Inc., AMCO Farms, Inc., AMCO Storage, Inc. and AMCO Express, Inc., as well as individual defendant

Gina Amicone. (ECF No. 15-4, PageID.233.) Defendants argue that amendment would be futile, because the Court lacks personal jurisdiction over the Proposed Defendants and because AMCO Produce, Inc. "is not subject to PACA." (ECF No. 24, PageID.283.) The Court concludes, as set forth below, that it only has personal jurisdiction over AMCO Produce, Inc., but AMCO Produce, Inc. is not subject to PACA. Accordingly, amendment would be futile, and the Motion must be denied.

### A.    Personal Jurisdiction

The Court begins its analysis with Defendants' objections related to the lack of personal jurisdiction. *See Bird v. Parsons*, 289 F.3d 865, 872 (6th Cir. 2002) (holding that personal jurisdiction is a threshold question that precedes the merits). Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). When a court decides a motion under Rule 12(b)(2):

> The plaintiff must first make a prima facie case, which can be done merely through the complaint. The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. Once the defendant has met the burden, it returns to the plaintiff, who may no longer "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."

*Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (citations omitted). "The party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction, over each defendant independently." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citations and internal quotations omitted).

If the district court rules on a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only make out a prima facie case that personal jurisdiction exists. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). "The plaintiff meets this burden by setting forth 'specific facts showing that the court has jurisdiction.'" *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (quoting *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). "[T]he plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). The court views the filings "'in a light most favorable to the

7

plaintiff,' without weighing 'the controverting assertions of the party seeking dismissal.'" *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017) (quoting *Theunissen,* 935 F.2d at 1459).

Personal jurisdiction can be "general" or "specific." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citing *Bird*, 289 F.3d at 873). General personal jurisdiction exists when "the defendant's affiliations with the forum state are so continuous and systematic as to render the defendant essentially at home there." *Malone*, 965 F.3d at 501 (cleaned up). Specific personal jurisdiction depends on "an affiliation between the forum state and the underlying controversy." *Id.* at 502 (cleaned up). When—as here—subject matter jurisdiction arises under federal question jurisdiction, "personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird*, 289 F.3d at 871 (cleaned up).

Plaintiff cites several provisions in Michigan's long-arm statute to argue that the Court has personal jurisdiction over the Proposed Corporate Defendants. Because Plaintiff's jurisdictional arguments rely, in part, on a so-called alter-ego claim, the Court begins with that claim.

1.    *Plaintiff's Alter-Ego Claim*

Plaintiff argues that AMCO Produce Corporation, a Michigan corporation, is an alter ego of AMCO Produce., Inc., a Canadian company, which is one of the Proposed Defendants. (ECF No. 15-4, PageID.240–242.) When two companies are alter egos of one another, a non-resident corporation like AMCO Produce., Inc. "is amenable to suit in the forum state" where its alter ego resides. *See Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008).

To determine whether to apply alter-ego liability, the Court applies Michigan law. *See Lyngaas v. Curaden Ag*, 992 F.3d 412, 420 (6th Cir. 2021) (explaining that—except in labor law and ERISA contexts—state law applies to alter-ego claims). Under Michigan law, "[w]here the corporation is a mere agent or instrumentality . . . or a device to avoid legal obligations, the corporate entity may be ignored." *Kline v. Kline*, 104 Mich. App. 700, 702 (1981). The Sixth Circuit has explained:

> "[T]he general principle in Michigan is that separate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice." *Wodogaza v. H & R Terminals, Inc.*, 161 Mich. App. 746, 756 (1987). *See also Wells v. Firestone Tire and Rubber Co.*, 421 Mich. 641,

9

650 (1984). A court may find that one entity is the alter ego of another and pierce the corporate veil upon proof of three elements: first, the corporate entity must be a mere instrumentality of another; second, the corporate entity must be used to commit a fraud or wrong; and third, there must have been an unjust loss or injury to the plaintiff. *Nogueras v. Maisel & Assoc. of Michigan,* 142 Mich. App. 71, 86 (1985).

*In re RCS Engineered Prods. Co., Inc.*, 102 F.3d 223, 226 (6th Cir. 1996); *see also Gallagher v. Persha*, 315 Mich. App. 647, 654 (2016) (explaining that alter-ego claims are "an equitable remedy sparingly invoked to cure certain injustices that would otherwise go unredressed").

To determine whether one corporate entity is the "mere instrumentality" of another, courts consider the following factors: "undercapitalization of the corporation, the maintenance of separate books, the separation of . . . finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham." *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704–05 (6th Cir. 1988); *see also Glenn v. TPI Petroleum, Inc.*, 305 Mich. App. 698, 716 (2014) (setting forth the same factors).

Plaintiff discusses some of the factors relevant to an alter-ego claim. It does not address whether the two companies alleged to be alter

10

egos have separate books, observe corporate formalities, or have separate finances.[2]

Plaintiff does provide support for its alter-ego claim, however. It asserts that AMCO Produce Corporation is undercapitalized. (ECF No. 15-4, PageID.242.) AMCO Produce Corporation's failure to pay Plaintiff is evidence of undercapitalization. *See Lyngaas*, 992 F.3d at 421 (stating that failure to pay creditors is evidence of undercapitalization). While undercapitalization is not a decisive factor, it weighs in favor of applying alter-ego liability. *Id.* Plaintiff also alleges that AMCO Produce Corporation "is a shell corporation organized for the sole purpose of obtaining a PACA license for use by AMCO Produce, Inc." and that "AMCO Corp. and AMCO Produce have abused the corporate forms to deprive Plaintiff of the PACA trust funds to which it is entitled." (ECF No. 15-4, PageID.242.) Courts have held that sharing a PACA license weighs in favor of finding that two companies are alter egos. *See Coast-*

---

[2] Plaintiff asserts that discovery will show that the AMCO Group, meaning the Canadian Proposed Corporate Defendants, "commingled proceeds from the sale of produce and regularly transferred funds among the AMCO Group companies to fund their operations." (ECF No. 15, PageID.170.) But Plaintiff does not allege that the Michigan-based AMCO Produce Corporation and the Canada-based AMCO Produce, Inc., lack separate finances, which is what is relevant to Plaintiff's alter-ego claim regarding those two entities.

*to-Coast Produce, LLC v. Lakeside Produce USA, Inc.*, 709 F. Supp. 3d 413, 442 (E.D. Mich. 2023). Plaintiff alleges that the Canadian AMCO Produce Inc. has used the Michigan-based AMCO Produce Corporation's PACA license to pursue its trust rights in connection with invoices issued by the Canadian company, including when selling produce to Plaintiff in the past. (ECF No. 15-4, PageID.237–238, 241.) It points to legal claims filed by AMCO Produce, Inc. as evidence. (*See* ECF Nos. 15-1, 15-2.)

Plaintiff also provides evidence that AMCO Produce Corporation uses AMCO Produce Inc. as a "trade name." (ECF No. 15-1, PageID.197.) It alleges Defendant Fausto Amicone is "listed as the Reported Principal on the PACA license for AMCO Produce Corp., he is listed as the President in AMCO [Produce] Corp.'s corporate filings, and he is listed, with his wife Gina Amicone, as a director [of] AMCO Produce, [Inc.] and he is the President, Secretary, and Treasurer of AMCO Produce[, Inc.]" (ECF No. 15, PageID.168.)

In response to Plaintiff's alter-ego claim, Defendants argue that PACA does not apply to foreign entities, citing statements from the United States Department of Agriculture to AMCO Produce Corporation and asserting that "[Plaintiff] has failed to allege that AMCO [Produce,

Inc.] has a domestic location from which it purchased and sold produce."
(ECF No. 24, PageID.288.) Defendants also argue that the Canadian
AMCO Produce, Inc. is the purchaser in the sales transactions at issue
in this litigation—not the Michigan corporation, AMCO Produce
Corporation (*Id.* at PageID.288–289.) But that ignores that Plaintiff's
allegation is that the Canadian AMCO Produce, Inc. is the alter-ego of
AMCO Produce Corporation, which has a Michigan address. (ECF No.
15-4, PageID.234.) Plaintiff's contention is that these companies cannot
be distinguished, and each company's actions should be attributed to the
other company. (ECF No. 25, PageID.380.) Defendants' arguments
assume the contrary without directly engaging with the legal standard
set forth for alter-ego claims under Michigan law.

At this stage, Plaintiff plausibly alleges that AMCO Produce
Corporation is a mere instrumentality of AMCO Produce, Inc., given the
way AMCO Produce, Inc. allegedly used AMCO Produce Corporation for
its PACA license, AMCO Produce Corporation's undercapitalization, and
the other overlaps between them that are set forth above.

The other two prongs of the alter-ego analysis are also met. "A
breach of contract is sufficient to satisfy the 'fraud or wrong' element of

13

an alter ego claim." *See Coast-to-Coast Produce, LLC*, 709 F. Supp. 3d at 442 (emphasis omitted) (citing *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 799-800 (6th Cir. 2007)). Plaintiff's proposed amended complaint includes such a breach claim against AMCO Produce Corporation and AMCO Produce, Inc. (ECF No. 15-4, PageID.254.) It also includes a claim of "unjust loss or injury." *In re RCS Engineered Prods. Co., Inc.*, 102 F.3d at 226. Plaintiff asserts that it suffered $1,977,205.55 in losses after AMCO Produce Corporation and AMCO Produce, Inc. "failed and refused" to pay for the produce it received. (ECF No. 15-4, PageID.238, 240.)

Plaintiff has therefore plausibly alleged that AMCO Produce Corporation is a mere instrumentality and alter ego of AMCO Produce, Inc., which means they are liable for one another's conduct, *In re Flint Water Cases*, 584 F. Supp. 3d 383, 399 (E.D. Mich. 2022), and can be treated as the "same for purposes of jurisdiction." *Indah v. SEC*, 661 F.3d 914, 921 (6th Cir. 2011).

### 2.   *General Jurisdiction*

Michigan's general personal jurisdiction statute for corporations allows for personal jurisdiction when a corporation is "(1) [i]ncorporat[ed]

14

under the laws of this state[;] (2) [provides c]onsent, to the extent authorized by the consent and subject to [statutory] limitations[. . . .]; [or] (3) [] carr[ies] on [] a continuous and systematic part of its general business within the state." Mich. Comp. Laws § 600.711. Once a court determines that there is general jurisdiction because a defendant is "at home in the forum state," any further "inquiry would be superfluous." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014).

In deciding whether an entity carries out "a continuous and systematic part of its general business within the state," Mich. Comp. Laws § 600.711, courts consider: "whether the particular corporate entity has a physical location, officers, employees, or bank accounts in Michigan," "a corporation's conduct in soliciting and procuring sales and purchases within Michigan," and whether an entity is "essentially at home in" Michigan. *Glenn*, 305 Mich. App. at 707–08.

As set forth above, AMCO Produce Corporation is an alter ego of AMCO Produce, Inc. Plaintiff alleges that AMCO Produce Corporation is a Michigan corporation "with its principal places of business in Detroit, Michigan and Leamington, Ontario, Canada." (ECF No. 15-4, PageID.235.) Corporations that are incorporated under Michigan law are

15

subject to Michigan's general personal jurisdiction statute. Mich. Comp. Laws § 600.711(1). The Court therefore has general jurisdiction over AMCO Produce Corporation based on the Michigan general personal jurisdiction statute. Because AMCO Produce, Inc. is the alter ego of AMCO Produce Corporation, the Court has general personal jurisdiction over AMCO Produce, Inc., too. *See Estate of Thomson*, 545 F.3d at 362 (explaining that when one corporation is another's alter ego courts can "impute" personal jurisdiction as though the corporations were not separate entities).

Plaintiff does not allege that Proposed Defendants AMCO Farms, Inc., AMCO Storage, Inc. and AMCO Express, Inc. are alter egos of any Michigan corporations, however. And all three of those Proposed Defendants are Canadian companies that are headquartered in Canada. (ECF No. 15-4, PageID.236.) In support of the Court exercising personal jurisdiction over AMCO Farms, Inc., AMCO Storage, Inc. and AMCO Express, Inc., Plaintiff cites evidence that these three Canadian companies advertise their "proximity to Michigan" by "tout[ing]" their closeness to the Michigan border. (ECF No. 25, PageID.383.) But even advertising directly to Michigan residents is insufficient on its own for

16

general jurisdiction. *See Oberlies v. Searchmont Resort, Inc.*, 246 Mich. App. 424, 428 430–31 (2001). These Proposed Corporate Defendants also state on their website that they ship "1 million pounds a year from Detroit, Michigan."[3] (ECF No. 25, PageID.384.) While that indicates that they engage in continuous annual sales from Michigan, those sales are dwarfed by the 50 million pounds of produce they ship from Ontario, Canada. (*Id.*) Assessing whether a non-resident corporation is at home in a state for purposes of general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler AG*, 571 U.S. at 139 n.20. For example, even when a company does significant business in a state, that is not enough for general jurisdiction when that activity is only a small percentage of their overall business. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 406, 414

---

[3] Plaintiff also asserts that "[i]n addition to sales and transactions under its own name and/or produce label and upon information and belief, the proposed Defendants also grow and pack produce for other companies under other labels, and that produce – grown by AMCO – is placed into the stream of commerce in Michigan and throughout the United States." (ECF No. 25, PageID.384.) Plaintiff offers no citation for this claim, nor did they include it in the proposed amended complaint. The Court therefore does not rely on this assertion in its jurisdictional analysis.

(2017) (holding that there was not general personal jurisdiction over a company that "has 2,061 miles of railroad track in [the forum state] (about 6% of its total track mileage of 32,500), employs some 2,100 workers there (less than 5% of its total work force of 43,000), generates less than 10% of its total revenue in the [the forum state], and maintains only one of its 24 automotive facilities in [the forum state] (4%)"). Although AMCO Farms, Inc., AMCO Storage, Inc. and AMCO Express, Inc. may conduct business in Michigan, Plaintiffs do not present evidence of adequate operations—or any other justification—to conclude that this is "an exceptional case" where the Court should exercise general personal jurisdiction over a corporation that is incorporated and has its principal place of business outside the forum state. *Daimler AG*, 571 U.S. at 139 n.19.

Plaintiff also argues that the Court has personal jurisdiction over Gina Amicone, due to her role as a director of AMCO Produce, Inc., which is an alter ego of Michigan corporation AMCO Produce Corporation (ECF No. 25, PageID.384.) Defendants argue that the "fiduciary shield doctrine" precludes establishing personal jurisdiction over an individual based on their actions undertaken in a corporate role. (ECF No. 24,

PageID.292 (citing *Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 959 (N.D. Ohio 2018).) Michigan courts have rejected the fiduciary shield doctrine, however. *W.H. Froh, Inc. v. Domanski*, 252 Mich. App. 220, 238 (2002) ("[W]e explicitly hold that the fiduciary shield doctrine does not constitute a valid argument against a Michigan court's exercise of personal jurisdiction over a nonresident individual defendant who otherwise falls within the scope of Michigan's long-arm statute.") However, Plaintiff does not allege that Gina Amicone meets any of the statutory criteria for general personal jurisdiction over an individual. Mich. Comp. Laws § 600.701 (listing the following relationships as a basis for general jurisdiction over an individual: presence in the state when process is served, domicile in the state when process is served, and consent).

There is therefore general personal jurisdiction over AMCO Produce, Inc., but not over the other proposed Defendants.

19

### 3.   *Specific Jurisdiction*

The question is now whether the Court can exercise specific personal jurisdiction[4] over AMCO Farms, Inc., AMCO Storage, Inc., AMCO Express, Inc., and Gina Amicone.

As to AMCO Farms, Inc., AMCO Storage, Inc., and AMCO Express, Inc., Plaintiff cites two portions of Michigan's specific personal jurisdiction statute for corporations, (ECF No. 25, PageID.382–383), which allow for personal jurisdiction when a corporation "transact[s] [] any business within the state" or "[e]nter[s] into a contract for services to be performed or for materials to be furnished in the state by the defendant." Mich. Comp. Laws § 600.715(1,5).

Mich. Comp. Laws § 600.715(5) does not support exercising specific personal jurisdiction over these three Proposed Defendants. Plaintiff does not explain what services were performed or materials were furnished in Michigan by AMCO Farms, Inc., AMCO Storage, Inc., and AMCO Express, Inc., nor do they provide or discuss a contract that would fall under this provision of the statute.

---

[4] "Specific jurisdiction is sometimes referred to as 'limited personal jurisdiction.'" *Sullivan v. LG Chem Ltd.*, 79 F.4th 651, 661 n.3 (6th Cir. 2023).

With respect to Mich. Comp. Laws § 600.715(1), the Sixth Circuit has explained that "when a defendant conduct[s] even the slightest act of business in Michigan, a sufficient transaction of business occurs under § 600.715(1)." *Sullivan v. LG Chem Ltd.*, 79 F.4th 651, 667 (6th Cir. 2023) (internal quotations omitted). Plaintiff asserts that AMCO Farms, Inc., AMCO Storage, Inc., and AMCO Express, Inc. "transact business in Michigan." (ECF No. 25, PageID.383; *see also* ECF No. 15-4, PageID.234.) It cites a corporate website referencing the Proposed Corporate Defendants' proximity to the Michigan border and stating that they ship produce from Detroit, Michigan. (ECF No. 25, PageID.383–384.) Plaintiff therefore makes a prima facie case that AMCO Farms, Inc., AMCO Storage, Inc., and AMCO Express, Inc. transact business in Michigan.

For there to be personal jurisdiction under this provision, however, the cause of action must "aris[e] out of" a party's business transactions in the state. Mich. Comp. Laws § 600.715. "Michigan courts have liberally construed the long-arm statute's arising-out-of language." *Sullivan*, 79 F.4th at 667. But Plaintiff's argument for personal jurisdiction under this provision does not survive even under a liberal construction of the

statute. Plaintiff's causes of action against AMCO Farms, Inc., AMCO Storage, Inc., and AMCO Express, Inc. arise from allegedly receiving and retaining trust assets, specifically assets that came from AMCO Produce, Inc. and AMCO Produce Corporation's purchase of produce from Plaintiff. (ECF No. 15-4, PageID.249–254.) Plaintiff does not allege that the activity underlying those claims occurred in Michigan nor that the relevant activity supports the Court exercising personal jurisdiction over these three Proposed Defendants. Indeed, any activity related to trust assets is wholly distinct from the produce sales Plaintiff attempts to rely upon in its arguments for personal jurisdiction. (ECF No. 25, PageID.383–384.) Plaintiff has not demonstrated that the Court has jurisdiction over AMCO Farms, Inc., AMCO Storage, Inc., and AMCO Express, Inc. under Michigan's specific jurisdiction statute, because the causes of action against them do not arise from their business transactions in Michigan. The Court cannot exercise specific or general personal jurisdiction over these three Proposed Defendants.

As to Gina Amicone, Michigan's specific personal jurisdiction statute for individuals allows for personal jurisdiction when an individual transacts any business in the state or acts as a director of a

corporation that is incorporated in or has its principal place of business in Michigan. Mich. Comp. Laws § 600.705(1,6). Plaintiff alleges that Gina Amicone is "a director of AMCO Produce[, Inc.] and AMCO Express, and an officer of AMCO Express." (ECF No. 15-4, PageID.237.) It also alleges that AMCO Produce, Inc. is an alter ego of AMCO Produce Corporation and brings various claims against both entities.

Under Mich. Comp. Laws § 600.705(1), "[t]he transaction of any business within the state" establishes specific personal jurisdiction so long as it arises out of acts that are related to a plaintiff's claim. *Lafarge Corp. v. Altech Envtl. U.S.A.*, 220 F. Supp. 2d 823, 828 (E.D. Mich. 2002). Even the "slightest" such business transaction is sufficient. *See Yoost v. Caspari*, 295 Mich. App. 209, 229 (2012). As set forth above, the Proposed Corporate Defendants ship produce from Michigan. Because those business transactions are *sales* that are unrelated to the cause of action in this litigation, which revolves around *purchases*, those transactions do not confer specific personal jurisdiction. *See Malone*, 965 F.3d at 502 (holding that specific jurisdiction requires an affiliation between the forum state and the "underlying controversy"). Plaintiff also asserts that Gina Amicone "was directly involved in the produce purchases at issue

23

and directly oversaw the application of the PACA trust." (ECF No. 25, PageID.384.) It does not state that any of her alleged conduct occurred in Michigan, however, nor does it provide any evidence that her conduct occurred in Michigan. This provision does not support exercising specific personal jurisdiction over Gina Amicone.

Plaintiff also cites Mich. Comp. Laws § 600.705(6), which allows for specific personal jurisdiction when someone acts "as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within [Michigan]." However, "[t]he fact that a corporation does business in Michigan, without more, is insufficient for a court to assert personal jurisdiction over the directors and officers of that corporation." *SFS Check, LLC v. First Bank of Delaware*, 990 F. Supp. 2d 762, 771 (E.D. Mich. 2013) *aff'd* 774 F.3d 351 (6th Cir. 2014). An individual corporate officer must also be "actively and personally involved in the conduct giving rise to the claim." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000). Gina Amicone is alleged to be a director and officer of the alter ego of Michigan corporation AMCO Produce Corporation. Plaintiff also asserts that she "was directly involved in the produce purchases at issue and

24

directly oversaw the application of the PACA trust." (ECF No. 25, PageID.384; *see also* ECF No. 15-4, PageID.247–249.) This conclusory assertion about direct personal involvement falls short of the requirement that a plaintiff make a prima facie case for personal jurisdiction with "reasonable particularity." *Malone*, 965 F.3d at 504.

Even if the generality of some of Plaintiff's assertions regarding Gina Amicone did not undermine the applicability of Michigan's specific personal jurisdiction statute, exercising personal jurisdiction over her would violate due process. Plaintiff has the burden of making a prima facie showing of personal jurisdiction, and it does not meet that burden with respect to due process. *See Malone*, 965 F.3d at 504 (setting forth that the burden to make a prima facie case lies with the plaintiff). Plaintiff addresses due process in a cursory and insubstantial manner. (ECF No. 25, PageID.383 ("[T]he Court's exercise of jurisdiction over the proposed Defendants would comply with the 14th Amendment's Due Process requirements and the application of the same under the 6th Circuit's three-part test." (citing *Sullivan*, 79 F.4th at 670)).)

To determine whether an exercise of specific personal jurisdiction comports with Due Process under the Fourteenth Amendment, courts in the Sixth Circuit apply a three-part test:

> "First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Id.* (emphasis in original) (quoting *Air Prods.*, 503 F.3d at 550). Second, the claims "'must arise out of or relate to the defendant's contacts' with the forum." *Ford*, 141 S. Ct. at 1025 (quoting *Bristol-Myers*, 137 S. Ct. at 1780); *see also AlixPartners*, 836 F.3d at 549. Third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *AlixPartners*, 836 F.3d at 549–50 (quoting *Air Prods.*, 503 F.3d at 550).

*Sullivan*, 79 F.4th at 670.

As to the first requirement, the Supreme Court has explained that purposeful availment involves a defendant's own choices to deliberately "reach[] out" to a forum state, including by participating in a market in that state. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021).

Plaintiff asserts that Gina Amicone is a director of the alter-ego of a Michigan corporation. When two entities are alter egos, a court can "impute personal jurisdiction" from one entity to the other. *Estate of*

26

*Thomson*, 545 F.3d at 362. When a defendant purposefully avails themselves of the "benefits and protections" of a forum state's law, the purposeful availment requirement is met. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997). Plaintiff alleges that Gina Amicone directs AMCO Produce, Inc., which, in turn, means that she directs its Michigan-based alter ego AMCO Produce Corporation (ECF No. 15-4, PageID.247–249.) That role with respect to a Michigan corporation involves availing herself of the "benefits and protections" of Michigan laws that enabled AMCO Produce Corporation to incorporate and operate. Such a role in relation to a Michigan corporation is not "random, isolated, or fortuitous." *Ford Motor Co.*, 592 U.S. at 359. When someone has "availed [themselves] of the privilege of conducting business [in a forum state], and [their] activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require [them] to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). The purposeful-availment requirement of Due Process is therefore met for Gina Amicone.

27

As to the second requirement, there must be an "affiliation between the forum and the underlying controversy," meaning that Defendants' contacts with Michigan must be "substantial[ly] connect[ed]" to the cause of action in the case. *Sullivan*, 79 F.4th at 672. The Sixth Circuit has explained that this standard is "lenient." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 903 (6th Cir. 2017). Nonetheless, such a substantial connection is absent here; as alleged by Plaintiff, the cause of action does not "arise from the business transacted in" Michigan. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 383 (6th Cir. 1968). Gina Amicone allegedly has a role in AMCO Produce Corporation, a Michigan corporation, but Plaintiff alleges that AMCO Produce Corporation's "sole purpose" is to provide certain protections for the Canadian AMCO Produce, Inc. when it sells produce in the United States. (ECF No. 15-4, PageID.242.) The business activities that provide a basis for finding purposeful availment are not substantially connected to the business activities that are alleged in support of Plaintiff's claims. The proposed amended complaint's allegations involve purchases of produce. The proposed amended complaint does not allege nor does Plaintiff provide evidence that those purchases occurred in Michigan in any relevant

28

respect. Without any basis to find a substantial connection between Gina Amicone's contacts with the forum state and the underlying controversy and allegations in this litigation, exercising personal jurisdiction over her would violate Due Process.

### 4.   *Conclusion*

For the reasons set forth above, the Court lacks personal jurisdiction over all the Proposed Defendants except for AMCO Produce, Inc. The Court has general jurisdiction over AMCO Produce, Inc., because its alter ego is a Michigan corporation. In Plaintiff's reply, it mentions seeking leave to conduct jurisdictional discovery about the Proposed Defendants' "activities in Michigan given their long history, [the] proximity of AMCO Group to Detroit, representations on their website, sales of produce into Michigan and the United States, and their other work and contracts with parties in Michigan and throughout the United States." (ECF No. 25, PageID.384.) A court may permit such discovery in response to the sort of jurisdictional arguments raised by Defendants. *See Theunissen*, 935 F.2d at 1465. However, even if the Court were to grant such discovery despite Plaintiff's failure to allege a prima facie case to support a finding of personal jurisdiction over the

majority of the Proposed Defendants, the Court would still deny the Motion as futile. As set forth below, Plaintiff's attempt to apply PACA to the Proposed Defendants fails. That failure requires denying the Motion.

### B.    The Presumption Against Extraterritoriality

Defendants assert that Plaintiff "does not allege sufficient facts to support a plausible PACA Trust claim," because PACA does not apply to AMCO Produce, Inc. (ECF No. 24, PageID.284.) They argue that amendment is therefore futile under Federal Rule of Civil Procedure 12(b)(6). (*Id.* at PageID.283.)

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

30

Defendants argue that PACA does not apply extraterritorially, which means that Plaintiff's allegations against AMCO Produce, Inc. would not survive a motion to dismiss. (ECF No. 24, PageID.284.) The Supreme Court has instructed that

> [i]t is a longstanding principle of American law "that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Foley Bros.,* 336 U.S. at 285. This "canon of construction . . . is a valid approach whereby unexpressed congressional intent may be ascertained." *Ibid.* It serves to protect against unintended clashes between our laws and those of other nations which could result in international discord. *See McCulloch v. Sociedad Nacional de Marineros de Honduras,* 372 U.S. 10, 20–22 (1963).

*E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991). To ascertain whether Congress intended for a law to apply extraterritorially, courts consider whether statutory language reflects an intention that a law reach beyond the United States' borders. *Id.*; *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none.") The Supreme Court has established a two-step extraterritoriality analysis:

> At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies

31

extraterritorially. . . . If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's "focus." If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.

*RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337 (2016).

As to the first step, Plaintiff points to language in PACA that it says indicates such an intention. PACA applies to transactions in interstate or foreign commerce, which "means commerce between any State or Territory, or the District of Columbia and any place outside thereof; or between points within the same State or Territory, or the District of Columbia but through any place outside thereof; or within the District of Columbia." 7 U.S.C. § 499a(b)(3). PACA also refers to "[p]erishable agricultural commodities received by a commission merchant, dealer, or broker in *all transactions*." 7 U.S.C. § 499e(c)(2) (emphasis added).

The language Plaintiff cites does not defeat the "presumption against extraterritoriality," which presumes that United States laws do not apply to "conduct in the territory of another sovereign." *Abitron*

32

*Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 417 (2023). The Supreme Court has "repeatedly held" that references to foreign commerce do not defeat the presumption against extraterritoriality and that "generic terms" like "all," "any," and "every" do not defeat that presumption either. *Id.* at 420–21. Plaintiff does not point to any other language in PACA that indicates that the statute applies to foreign conduct. PACA does not contain language that "unmistakably instruct[s]" that it applies extraterritorially. *Id.* at 417.

At the second step of the analysis, courts are required to identify the "focus" of a statute, "which can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate." *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 413–14 (2018) (cleaned up). The purpose of PACA is to protect "produce suppliers" who engage in transactions with distant customers and, as a result, are at risk when buyers fail to make contractually required payments. *Sanzone-Palmisano Co. v. M. Seaman Ents., Inc.*, 986 F.2d 1010, 1012 (6th Cir. 1993). After identifying the statutory focus, courts must consider "whether the conduct relevant to that focus occurred in United States territory." *Abitron Austria GmbH*, 600 U.S. at 418 (cleaned

up). A case involving the change of venue in a PACA case sheds light on how to locate the conduct relevant to a PACA claim geographically. There the court held that "the acts or omissions" relevant to the PACA claims occurred where the defendant corporation was headquartered, where its director resided, where the commodities were delivered, and where invoices for those commodities were signed. *C.M.B. Foods, Inc. v. Corral of Middle Ga.*, 396 F. Supp. 2d 1283, 1285–86 (M.D. Ala. 2005).

Plaintiff alleges that Defendants "failed and refused to pay the balance due to Plaintiff despite repeated demands." (ECF No. 15-4, PageID.240.) It further alleges that this failure and refusal indicates a failure to properly maintain a PACA trust. (*Id.*) But Plaintiff does not allege that this conduct occurred domestically. AMCO Produce, Inc. is "a Canadian company with its principal place of business in Leamington, Ontario, Canada." (*Id.* at PageID.235.) Plaintiff does not allege where Defendant Fausto Amicone or Proposed Defendant Gina Amicone,[5] the directors of AMCO Produce, Inc., reside. Plaintiff's proposed amended complaint alleges that it issued invoices to "the AMCO Produce

---

[5] Defendants assert that Gina Amicone resides in Canada. (ECF No. 24, PageID.291.)

Companies," by which it refers to AMCO Produce Corporation (the Michigan corporation) and AMCO Produce, Inc. (the Canadian company), but it does not state where it delivered the produce nor where invoices were provided or signed. (*Id.* at PageID.239.) It does not allege that the produce was delivered in Michigan, instead asserting that "[i]t does not matter where the produce was delivered."[6] (ECF No. 25, PageID.382.) In alleging personal jurisdiction in the proposed amended complaint, Plaintiff states that "Defendants caused a tortious injury in this District by failing to preserve and pay over trust assets belonging to Plaintiff." (ECF No. 15-4, PageID.234.) It does not explain how Proposed Defendants that are Canadian caused such an injury in the Eastern District of Michigan, given that neither they nor Plaintiff are located in this District. (*See id.* at PageID.235–236.) None of these allegations or evidence suggests that the conduct alleged under PACA occurred in the United States.

---

[6] Defendants assert that the produce was sold and shipped to AMCO Produce, Inc. in Leamington, Ontario. (*See* ECF No. 24-2, PageID.307–378 (invoices from Plaintiff to AMCO Produce, Inc. indicating that the produce was sold to and shipped to Canadian addresses belonging to AMCO Produce, Inc.).)

However, as set forth above, Plaintiff has adequately alleged that the Canadian company AMCO Produce, Inc. and the Michigan corporation AMCO Produce Corporation are alter-egos. Such alter-ego claims, when valid, allow a court to treat two entities as one when determining liability. *In re RCS Engineered Prods. Co., Inc.*, 102 F.3d at 226 ("[C]ourts apply the alter ego theory and disregard a company's separate corporate identity for the benefit of third parties . . . who would suffer an unjust loss or injury[.]"); *see also Kline*, 104 Mich. App. at 702–03 ("The fiction of a corporate entity . . . was introduced for convenience and to serve the ends of justice, but when it is invoked to subvert the ends of justice it should be and is disregarded by the courts.")

The issue is whether Plaintiff's claims run afoul of the presumption against extraterritoriality, though. Even if Plaintiff's alter-ego claim succeeds, that does not change where the conduct relevant to the PACA claims occurred. With respect to the Michigan corporation AMCO Produce Corporation, Plaintiff asserts that "AMCO [Produce] Corp[.] is a shell corporation organized for the sole purpose of obtaining a PACA license for use by AMCO Produce, Inc. to protect its sales in the United States." (ECF No. 15-4, PageID.242.) If protection of sales is the

American corporate Defendant's "sole" role, that further indicates that none of the relevant conduct—meaning the conduct related to the *purchase* of produce—occurred domestically.

Plaintiff's failure to overcome the two-step extraterritoriality analysis makes their proposed amendment futile. Count I is Plaintiff's alter-ego claim, but that "is not, in itself, a cause of action." *In re Flint Water Cases*, 584 F. Supp. 3d at 399 (citing *In re RCS Engineered Prods. Co., Inc.*, 102 F.3d at 226). Counts II and III are futile, because they assert PACA claims against AMCO Produce Corporation and AMCO Produce, Inc. based on extraterritorial conduct. Counts IV through VIII allege claims that all derive from or are dependent on the unsuccessful PACA claims alleged in Counts II and III. Even Count IX, which appears to be a state-law claim for breach of contract, refers to PACA. (ECF No. 15-4, PageID.255.) Count X seeks attorney fees and interest under PACA. Amendment would therefore be futile.

Not only does the Court lack personal jurisdiction over the Proposed Defendants (except for AMCO Produce, Inc.), but PACA does not apply to the extraterritorial conduct Plaintiff alleges in the proposed amended complaint. Accordingly, amendment is futile, and the Motion is denied.

37

## IV.    Conclusion

For the reasons set forth above, the Court DENIES Plaintiff's

Motion for Leave to File Amended Complaint. (ECF No. 14.)

IT IS SO ORDERED.

Dated: June 3, 2025                    s/Judith E. Levy
Ann Arbor, Michigan                    JUDITH E. LEVY
                                       United States District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 3, 2025.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager